AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the

### Western District of New York

**United States of America**

**v.**

**JOHN BROWN,**

Case No. 25-MJ-4132

*Defendant*

## CRIMINAL COMPLAINT

    I, <u>Victoria J. Sharp,</u> the complainant in this case, state that the following is true to the best of my knowledge and belief: that between in or about March 2020 and in or about July 2024, in the Western District of New York, the defendant, JOHN BROWN violated:

    (1)  18 U.S.C. § 922(g)(1) (Possession of a Firearm and/or Ammunition by a Convicted Felon);
    (2)  18 U.S.C. § 1343 (Wire Fraud);
    (3)  18 U.S.C. § 1956 (Money Laundering- Promotion/Concealment); and
    (4)  18 U.S.C. § 1957 (Money Laundering- Monetary Transactions).

This Criminal Complaint is based on these facts: **SEE ATTACHED AFFIDAVIT OF IRS-CI SPECIAL AGENT VICTORIA J. SHARP.**

    ☒  Continued on the attached sheet.

VICTORIA J. SHARP
IRS-CI SPECIAL AGENT

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim. P. 4.1 and 4(d) on:

Date:  October 23, 2025

*Judge's signature*

City and State:  Rochester, New York

COLLEEN D. HOLLAND
UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK    )
COUNTY OF MONROE    )        ss:
CITY OF ROCHESTER    )

**Victoria J. Sharp**, being duly sworn, deposes and states:

1.      I am a Special Agent with the Internal Revenue Service Criminal Investigation ("IRS-CI"). I have been employed as a Special Agent with IRS-CI since August 2021. As a Special Agent with IRS-CI, I am a Federal Law Enforcement Officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure. My duties as a Special Agent with IRS-CI include conducting investigations of individuals and businesses that have violated Federal Law, particularly those laws found under Title 18, Title 26, and Title 31 of the United States Code, related to tax crimes, money laundering offenses, and presentation of false claims to the United States, among other offenses. During the course of my employment with IRS-CI, I have conducted and assisted on multiple criminal investigations involving tax fraud, money laundering, wire fraud, and the illegal structuring of financial transactions.

2.      I make this affidavit in support of a criminal complaint charging JOHN BROWN with violating Title 18, United States Code, Sections 922(g)(1) (possession of a firearm and/or ammunition by a convicted felon); 1343 (wire fraud); 1956 (money laundering, promotion/concealment) and 1957 (money laundering, monetary transactions) (together, the TARGET OFFENSES).

3.      The information and statements in this affidavit are based on my personal knowledge and information obtained from other law enforcement agencies assisting with this investigation including but not limited to the United States Department of Homeland Security

("DHS"), Homeland Security Investigations ("HSI"), the New York State Police ("NYSP"), the Bureau of Alcohol, Tobacco, Firearms, & Explosives ("ATF"), as well as information obtained from witness interviews, and from the review of records and documents including but not limited to bank records, business records, and other documents and evidence. Where the contents of documents and statements of others are reported herein, they are reported only in substance and in part, unless otherwise indicated. I have participated fully in this investigation, and as a result of this participation, as well as information provided by other law enforcement officers, I am fully familiar with the facts set forth herein. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that JOHN BROWN did knowingly violate the TARGET OFFENSES.

## PROBABLE CAUSE

### Background on JOHN BROWN Investigation

4.      As discussed in further detail below, JOHN BROWN owns Triclomes, LLC ("TRICLOMES"), which was a cannabis dispensary business located at 1631 Dewey Ave., Rochester, New York, 14615 engaged in the criminal sale and possession of THC containing cannabis and cannabis infused products. TRICLOMES does not have a New York State dispensary license and has never been legally permitted to sell THC or products containing THC.

5. According to records obtained from the New York State Department of State Division of Corporations website, TRICLOMES was organized as a Domestic Limited Liability Company on August 6, 2021.

6. JOHN BROWN also owns the Extreme Graphix Tattoo Shop ("EXTREME GRAPHIX"), which operates as a d/b/a under its parent company, Sniper, Inc. ("SNIPER") as a tattoo and piercing parlor located at 1635 Dewey Ave, Rochester, New York 14615.

7. Guardians of Green, Corp. ("GUARDIANS OF GREEN") is a company formed by JOHN BROWN, and others, that provided contract security services to business customers by providing security officers. GUARDIANS OF GREEN also served as on-premises security for TRICLOMES.

8. On July 11, 2023, the New York States Office of Cannabis Management ("OCM") conducted an inspection of TRICLOMES. According to OCM records, a significant amount of cannabis product was seized from inside of 1631 Dewey Ave. A Notice of Violation and Order to Cease Unlicensed Activity was issued by OCM to JOHN BROWN and TRICLOMES on July 11, 2023, based on OCM personnel's observation of cannabis flower, cannabis edibles, and cannabis concentrates all displayed for sale.

9. After the OCM seizure and notice of violation, between December 2023 and June 2024, investigators completed three undercover purchases of cannabis products from the 1631 Dewey Ave. premises. The buys took place both in the TRICLOMES store, and in the parking lot of the premises, as follows:

    a. Buy #1: in December 2023, an undercover law enforcement officer conducted a recorded purchase behind TRICLOMES. The purchase included concentrated cannabis, packaged cannabis (flower), and one pack of pre-rolls, totaling $170.00.

b.     Buy #2: in January 2024, an undercover law enforcement officer conducted a recorded purchase behind TRICLOMES. The purchase included two packages containing cannabis and concentrated cannabis vape pen, totaling $80. The undercover agent who conducted the purchase identified the seller in a single photo ID ("Employee 1"). Payroll records list Employee 1 as an employee of TRICLOMES in 2021 and 2022.

c.     Buy #3: in June 2024, an undercover law enforcement officer conducted a recorded purchase inside the TRICLOMES store. The purchase included one package of cannabis totaling $40.00. The officer then purchased two cannabis vape pens (disposable cartridges) totaling $120.00 from a van labeled "GOT Weed" parked in the parking lot of TRICLOMES. According to New York State Department of Motor Vehicles records, the van was registered to JOHN BROWN. The undercover agent who conducted the purchase identified the sellers in single photo IDs as Employee 1 and a second individual ("Employee 2"). Bank records indicate that multiple payroll checks were paid to the order of Employee 2 by TRICLOMES in 2023.

10.    On July 1 and 2, 2024, federal agents participated in a search warrant at 1631 and 1635 Dewey Ave, authorized by Monroe County Supreme Court Judge Vincent M. Dinolfo. During the search warrant, approximately 1,000 pounds of cannabis products were seized by NYSP investigators. In addition to cannabis products, business records of TRICLOMES, electronic devices, and ammunition were seized, among other items of evidence.

11.    One black garbage bag of what appeared to be cannabis was tested by the NYSP. The approximately 10-pound bag was found to be greater than 0.3% delta-9 Tetrahydrocannabinol ("THC").

### Money Laundering- Specified Unlawful Activity

12.    The distribution of marijuana, in violation of Title 21, United States Code, section 841, constitutes "specified unlawful activity" for money laundering under Title 18, United States Code, Sections 1956(c)(7) and 1957(f)(3).

13. According to multiple former employees of JOHN BROWN, TRICLOMES was a cannabis store that was primarily selling THC containing products. Further, EXTREME GRAPHIX and TRICLOMES both only accepted cash as payment for goods and services.

14. A cooperating witness ("CW1") who was employed by JOHN BROWN informed law enforcement officers that TRICLOMES only accepted cash as payment for cannabis products and was not aware of any credit card machines at the business. CW1 also said that there were ATM machines located within the TRICLOMES shop.

15. CW1 further stated that JOHN BROWN controlled the cash proceeds from cannabis sales and would only allow a couple of individuals to work at the cash register. JOHN BROWN would then count the money in the shop's vault and deposit cash in the bank every month. CW1 stated that employees regularly saw JOHN BROWN with large quantities of cash in his pockets and that JOHN BROWN would say he was taking the cash to the bank.

16. CW1 stated that he/she believed TRICLOMES was only selling cannabis products containing THC, with the exception of a limited supply of CBD products. He/she further stated that JOHN BROWN purchased cannabis from a known New York-licensed marijuana cultivator ("Supplier 1"). CW1 observed Supplier 1 deliver product in person and saw JOHN BROWN pay for the products in cash. CW1 also stated that JOHN BROWN purchased cannabis processing equipment from a company based in Arizona and witnessed the equipment within JOHN BROWN's building.

17. CW1 further described EXTREME GRAPHIX as a failing business and said that TRICLOMES was responsible for the majority of business revenue.

18. A second cooperating witness ("CW2"), who was also employed by JOHN BROWN from in or about 2022 until in or about 2024, informed law enforcement that TRICLOMES would only take cash as payment for products.

19. CW2 was hired by JOHN BROWN to assist with bookkeeping activities for EXTREME GRAPHIX. While employed by JOHN BROWN, CW2 assisted with making accounting entries in QuickBooks for EXTREME GRAPHIX and TRICLOMES. CW2 also assisted with banking transactions by making deposits of cash proceeds from TRICLOMES. Given CW2's role in assisting with the bookkeeping activities of JOHN BROWN's businesses, he/she had insight into the financial aspects of the businesses.

20. CW2 estimated that TRICLOMES was making approximately $20,000 per day, and that EXTREME GRAPHIX was making, at most, $1,000 per day. CW2 further stated that EXTREME GRAPHIX could not survive on its own, and that TRICLOMES "supported everybody."

21. CW2 stated that the primary bank account for EXTREME GRAPHIX was the SNIPER account at Canandaigua National Bank ("CNB").

22. CW2 further stated that EXTREME GRAPHIX's tattoo sales revenue did not reconcile with the SNIPER bank deposits. Specifically, the bank deposits were more than the tattoo sales because BROWN was depositing money into the SNIPER bank account at CNB that was not tattoo revenue.

23. CW2 further stated that cash proceeds from TRICLOMES were being deposited into a SNIPER bank account at CNB. CW2 physically made numerous deposits of cash, given to him/her by JOHN BROWN, into the CNB SNIPER account. CW2 also

stated that JOHN BROWN comingled personal and business transactions within his bank accounts.

24.    A third cooperating witness ("CW3"), who was also an employee of TRICLOMES from in or about 2021 through in or about 2023, informed law enforcement that TRICLOMES was only taking cash as payment for products.

25.    CW3 was hired by JOHN BROWN to work in the TRICLOMES shop and was primarily running the cash register, which involved taking cash payments from customers for products.  CW3 also occasionally assisted customers as a "budtender," which was a TRICLOMES employee who would assist customers in picking out cannabis products.  CW3 observed that the TRICLOMES sales were tracked on handwritten receipts and also using a point-of-sale system on an iPad at the register.

26.    CW3 told law enforcement that TRICLOMES was not a CBD shop, and was selling THC products such as flower, concentrates, vape products, pre-rolls, edibles, and other cannabis related items such as torches.

27.    CW3 recalled JOHN BROWN saying that on a good weekend day, TRICLOMES did between $25,000 and $30,000 in sales.

28.    CW3 stated that all of the cash from TRICLOMES sales went into one register, and that excess cash would be removed from the register and put into a slot next to the register. JOHN BROWN was usually the person that took the cash at the end of the night.  JOHN BROWN would sometimes be at TRICLOMES and tell CW3 that he was taking cash to the bank.

29.    A fourth cooperating witness ("CW4") was an employee and worked as the head manager of TRICLOMES from in or about 2021 through in or about 2022.

30.    CW4 stated that he/she was involved with ordering cannabis products and that he/she knew JOHN BROWN's cannabis product connections. CW4 stated that one supplier in particular ("Supplier 2") supplied a lot of marijuana and helped JOHN BROWN grow marijuana. CW4 stated that Supplier 2's husband would deliver marijuana and would be paid in cash. CW4 identified Supplier 1 as another supplier of marijuana. CW4 further stated that JOHN BROWN would have an unknown individual go to Arizona to pick up product from an unidentified supplier and bring it back. CW4 further stated that products would be delivered to TRICLOMES and he/she would receive the deliveries. JOHN BROWN would give CW4 cash to pay for the deliveries. At the end of the day, JOHN BROWN would collect the cash from the TRICLOMES shop.

31.    CW4 stated that JOHN BROWN had attempted to open a bank account for TRICLOMES, but could not get it approved because it was a cannabis dispensary.

32.    During the course of the investigation, bank records were obtained for multiple bank accounts, including:

a. Canandaigua National Bank account ending 7815 in the name of Sniper Inc, which was opened by JOHN BROWN and another employee of JOHN BROWN's on November 13, 2015.

b. Canandaigua National Bank account ending 2605 in the name of Guardians of Green Corp., which was opened by JOHN BROWN, and three employees of JOHN BROWN on December 22, 2022. On September 28, 2023, one of the employees was removed from the account and replaced with a different employee of JOHN BROWN.

c. Canandaigua National Bank account ending 0400 in the name of John P. Brown, which was opened by JOHN BROWN on February 16, 2023.

d. ESL Federal Credit Union account ending 5237 in the name of John P. Brown, which was opened by JOHN BROWN on May 20, 2022.

e. ESL Federal Credit Union account ending 5245 in the name of John P. Brown, which was opened by JOHN BROWN on May 20, 2022.

f. ESL Federal Credit Union account ending 7376 in the name of John P. Brown, which was opened by JOHN BROWN on May 9, 2024.

g. Tompkins Bank of Castile account ending 6621 in the name of Triclomes LLC, which was opened by JOHN BROWN on November 24, 2021.

h. Advantage Federal Credit Union account ending 1000 in the name of John P. Brown, which was opened by JOHN BROWN on May 18, 2022.

i. Advantage Federal Credit Union account ending 1800 in the name of John P. Brown, which was opened by JOHN BROWN on May 18, 2022.

33.    The analysis of records for the aforementioned bank accounts showed approximate cash deposits between calendar years 2021 and 2024 as follows:

| Summary of Cash Deposits | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Financial Institution | Account Name | Bank Account Number (Last 4 Digits) | 2020 | 2021 | 2022 | 2023 | 2024 | Cash Deposits (2020-2024) |
| CNB | Sniper Inc. | 7815 | $125,043 | $630,897 | $1,411,513 | $1,010,072 | $ 4,230 | $3,181,755 |
| CNB | Guardians of Green Corp. | 2605 | - | - | - | 438,769 | 1,900 | $ 440,669 |
| CNB | John P. Brown | 0400 | - | - | - | 14,860 | - | $ 14,860 |
| Tompkins | Triclomes LLC | 6621 | - | 52,110 | 214,881 | - | - | $ 266,991 |
| ESL | John P. Brown | 5245 | - | - | 533,970 | 114,470 | 45,610 | $ 694,050 |
| ESL | John P. Brown | 5237 | - | - | 9,050 | 6,000 | - | $ 15,050 |
| ESL | John P. Brown | 7376 | - | - | - | - | 21,000 | $ 21,000 |
| Advantage | John P. Brown | 1000 | - | - | 1,660 | - | 3,010 | $ 4,670 |
| Advantage | John P. Brown | 1800 | - | - | 16,000 | - | 34,916 | $ 50,916 |
| | | | | | | | | |
| Total Cash Deposits | | | $125,043 | $683,007 | $2,187,074 | $1,584,171 | $110,666 | $4,689,961 |

*Money Laundering- Concealment of Proceeds*

34.    JOHN BROWN concealed the nature and source of these proceeds from the illegal sale of cannabis by depositing cash into bank accounts which he controlled, including personal bank accounts in the name of John P. Brown, and business bank accounts in the name of other businesses operated by JOHN BROWN including SNIPER and GUARDIANS OF GREEN.

35. As shown in the table above, in 2021, approximately $52,000 was deposited into the TRICLOMES bank account held at Tompkins and approximately $215,000 was deposited in 2022.

36. According to the records provided by Tompkins, when JOHN BROWN opened the account in the name of TRICLOMES, he represented to Tompkins that the nature of his business was a food truck. Tompkins closed this bank account when they became aware that JOHN BROWN was involved in the cannabis business.

37. On April 25, 2025, JOHN BROWN mailed a binder to the United States Attorney's Office at 100 State Street, Rochester, NY 14614. The binder contained a letter signed by JOHN BROWN dated March 27, 2025, addressed to "US President Donald J. Trump" which stated that cannabis is listed with DEA as a "schedule 1 narcotic." JOHN BROWN also stated that "[t]he next major dynamic the de scheduling would do is allow for legitimate banking. The current state of banking is a mess to say the least. Cannabis business's having to work around a banking system that is blocked by the FDIC, and its technically illegal in the federal side, bridled by the schedule classification. We cannot take credit cards, pay for or receive payments via bank and wire transfers, forcing us to do business in cash, sometimes in the hundreds of thousands of dollars."

38. In another letter contained in the binder, dated November 10, 2024, addressed to "President Elect Donald Trump," and signed by JOHN BROWN, JOHN BROWN states that "the state of New York and its administration has turned cannabis into a nightmare, financially and mentally crushing hundreds of small business owners all over the state. Myself being one of them." JOHN BROWN later states in the letter they "they have forcibly shut us down, after 2.5 years open."

39.    I submit that the contents of these letters indicate that JOHN BROWN was aware of the illegality of his marijuana business, and conscious of the need to conceal banking practices relating to marijuana sales.

40.    Also included in the binder is a copy of what appears to be the warning letter issued to TRICLOMES, dated July 1, 2024, with an address of 1631 Dewey Ave, Rochester, NY 14615, and states "ILLICIT CANNABIS SEIZED" "PURSUANT TO NEW YORK STATE CANNABIS LAW AND REGULATIONS, ILLICIT CANNABIS HAS BEEN SEIZED AND THIS LOCATION MUST IMMEDIATELY CEASE THE SALE OF UNAPPROVED AND UNAUTHORIZED CANNABIS PRODUCTS."

### *Money Laundering- Promotion of Specified Unlawful Activity*

41.    The analysis of the bank records showed evidence of JOHN BROWN's promotion of specified unlawful activity by using proceeds of TRICLOMES sales on cannabis related expenses, including the following transactions:

a.    Approximately $162,091 paid to Comerg, LLC. According to the company's CEO and open-source information, Comerg, LLC is a company based in Phoenix, Arizona, that offers botanical processing equipment which can be used to process cannabis.

| PAYMENTS TO COMERG LLC | | | | | |
|---|---|---|---|---|---|
| BANK | ACCOUNT NAME | ACCOUNT NUMBER (LAST 4 DIGITS) | POSTED DATE | TRANSACTION DESCRIPTION | DISBURSEMENT AMOUNT |
| CNB | Sniper Inc. | 7815 | 6/9/2022 | DESCRIPTIVE WITHDRAWAL WIRE OUT | 50,000.00 |
| ESL FCU | John P. Brown | 5245 | 10/5/2022 | DOMESTIC WIRE WITHDRAWAL WIRE TO COMERG LLC | 13,906.67 |
| ESL FCU | John P. Brown | 5245 | 11/9/2022 | CHECK | 13,906.67 |
| CNB | Sniper Inc. | 7815 | 1/12/2023 | DESCRIPTIVE WITHDRAWAL WIRE OUT | 28,021.94 |
| CNB | Sniper Inc. | 7815 | 4/27/2023 | DESCRIPTIVE WITHDRAWAL WIRE OUT | 42,348.94 |
| CNB | Sniper Inc. | 7815 | 6/9/2023 | CHECK-INCLEARINGS | 13,906.67 |
| | | | | Total | 162,090.89 |

b.      Approximately $54,832 paid to Supplier 1, which as stated above, is a licensed New York State cannabis cultivator.

| DATE OF TRANSACTION | TRANSACTION DESCRIPTION | AMOUNT OF TRANSACTION |
|---|---|---|
| 3/3/2023 | Check #2331 – Supplier 1, Memo: Small jar order | 21,115.75 |
| 4/24/2023 | Check #2380 – Supplier 1 | 12,600.00 |
| 7/3/2023 | Check #1036 – Supplier 1, Memo: Jars | 21,115.75 |
| | Total | 54,831.50 |

42.     Records obtained during the search warrant executed by NYSP on July 1 and 2, 2024, at 1631 and 1635 Dewey Ave., included an invoice from Comerg, LLC for various pieces of equipment totaling $305,750.

43.     JOHN BROWN also promoted specified unlawful activity by using proceeds of TRICLOMES to pay employees selling THC products.

44.     According to payroll records obtained from ADP, TRICLOMES had nine employees in 2021 and paid wages totaling $18,240.00.  According to payroll records obtained from ADP and Alliance Payroll Solutions ("Alliance"), TRICLOMES had 24 employees in 2022 and paid wages totaling $561,678.00.  According to Alliance records, TRICLOMES had 22 employees in 2023 and paid wages totaling $399,140.95.

45.     According to a sample of payroll-related withdrawals obtained from bank records, from December 2021 through May 2022, ADP payroll payments for TRICLOMES were funded by the TRICLOMES bank account held at Tompkins:

| Tompkins - TRICLOMES LLC Account Ending 6621 | | |
|---|---|---|
| DATE OF TRANSACTION | TRANSACTION DESCRIPTION | AMOUNT OF TRANSACTION |
| 12/10/2021 | ADP WAGE PAY | 5,879.18 |
| 12/22/2021 | ADP WAGE PAY | 8,655.48 |
| 1/7/2022 | ADP WAGE PAY | 8,720.09 |
| 1/20/2022 | ADP WAGE PAY | 11,224.15 |
| 2/3/2022 | ADP WAGE PAY | 11,468.24 |
| 2/17/2022 | ADP WAGE PAY | 13,068.93 |

| | | |
|---|---|---:|
| 3/4/2022 | ADP WAGE PAY | 13,742.58 |
| 3/18/2022 | ADP WAGE PAY | 13,394.04 |
| 3/31/2022 | ADP WAGE PAY | 16,386.88 |
| 4/14/2022 | ADP WAGE PAY | 15,310.13 |
| 4/28/2022 | ADP WAGE PAY | 14,879.93 |
| 5/12/2022 | ADP WAGE PAY | 21,291.19 |

46.     According to a sample of payroll-related withdrawals obtained from bank records, from June 2022 through January 2023, payroll payments for TRICLOMES were funded by a personal bank account in the name of JOHN P. BROWN held at ESL:

| ESL - JOHN P. BROWN Account Ending 5245 | | |
|---|---|---|
| **DATE OF TRANSACTION** | **TRANSACTION DESCRIPTION** | **AMOUNT OF TRANSACTION** |
| 6/13/2022 | ACH WITHDRAWAL ADP WAGE PAY 323298036 WAGE PAY 6890883891526MK | 20,168.48 |
| 6/24/2022 | ACH WITHDRAWAL ADP WAGE PAY 323298036 WAGE PAY 6860918245246MK | 17,876.88 |
| 7/15/2022 | ACH WITHDRAWAL ADP WAGE PAY 323298036 RETRY PYMT 5360838600846MK | 19,982.62 |
| 8/5/2022 | ACH WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 19,924.55 |
| 8/19/2022 | ACH WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 20,076.31 |
| 9/2/2022 | ACH WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 22,322.92 |
| 9/16/2022 | ACH WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 19,103.58 |
| 9/30/2022 | ACH WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 20,688.15 |
| 10/14/2022 | ACH WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 21,395.74 |
| 10/28/2022 | ACH WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 17,579.56 |
| 11/15/2022 | ACH WITHDRAWAL ALLIANCE PAYROLL PULL TRICL | 18,915.80 |
| 11/28/2022 | ACH WITHDRAWAL ALLIANCE PAYROLL PULL TRICL | 15,734.77 |
| 12/9/2022 | ACH WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 16,254.49 |

| 12/23/2022 | ACH WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 18,893.53 |
| 1/6/2023 | ACH WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 22,557.09 |

47.     According to a sample of payroll-related withdrawals obtained from bank records, from February 2023 through August 2023, payroll payments for TRICLOMES were funded by a business bank account held at CNB in the name of GUARDIANS OF GREEN:

| CNB - GUARDIANS OF GREEN Account Ending 2605 | | |
|---|---|---|
| DATE OF TRANSACTION | TRANSACTION DESCRIPTION | AMOUNT OF TRANSACTION |
| 2/3/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 22,506.06 |
| 2/21/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 20,198.45 |
| 3/3/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 21,728.75 |
| 3/17/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 16,706.93 |
| 3/31/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 18,891.51 |
| 4/14/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 16,891.89 |
| 5/12/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 15,163.25 |
| 5/30/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 20,101.83 |
| 6/9/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 17,346.03 |
| 6/23/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 18,280.19 |
| 7/10/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 18,130.97 |
| 7/21/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 10,438.98 |
| 8/4/2023 | ELECTRONIC WITHDRAWAL ALLIANCE PAYROLL PAY TRICLM | 6,776.65 |

48.     According to a 2022 Form 940 Employer's Annual Federal Unemployment (FUTA) Tax Return in the name of TRICLOMES obtained during the search warrant conducted on July 1 and 2, 2024, total payments to employees were $561,678. This amount matches records obtained from Alliance.

*Money Laundering- Financial Transactions Over $10,000*

49.     JOHN BROWN utilized the proceeds from his drug trafficking activities deposited to CNB account ending 7815 in the name of SNIPER to conduct monetary transactions in excess of $10,000, in violation of Title 18 U.S.C. § 1957, on at least 10 separate occasions. Specifically, between January 2022 and July 2023, JOHN BROWN made the following financial transactions, each in excess of $10,000:

| CNB – SNIPER INC Account Ending 7815 | | |
|---|---|---|
| **DATE OF TRANSACTION** | **TRANSACTION DESCRIPTION** | **AMOUNT OF TRANSACTION** |
| 1/4/2022 | Check #2191 - Euro Car, Memo: "VIN 5CBBR53W06C06440 06 Bentley Flying Spur" | $          35,000.00 |
| 4/28/2022 | Check #2220 - West Herr, Memo: "Madi's Truck" | $          13,783.21 |
| 6/9/2022 | WIRE TRANSFER - Comerg LLC, Memo: "Purchase equipment" | $          50,000.00 |
| 11/18/2022 | Check #2306 - Security 101 | $          30,000.00 |
| 12/8/2022 | Check #2315 - Security 101, Memo: "Inv# P1109" | $          20,000.00 |
| 1/12/2023 | WIRE TRANSFER - Comerg LLC, Memo: "Payment on Equipment" | $          28,021.94 |
| 3/3/2023 | Check #2331 – Supplier 1, Memo: "small jar order" | $          21,115.75 |
| 4/27/2023 | WIRE TRANSFER - Comerg LLC, Memo: "Equipment Purchase" | $          42,348.94 |
| 6/20/2023 | Check #2400 - Tandoi Paving | $          35,000.00 |
| 7/18/2023 | WIRE TRANSFER - Law Offices Of Joseph Bondy | $          50,000.00 |

50.     JOHN BROWN utilized the proceeds of his drug trafficking activities that were deposited into the TRICLOMES Tompkins account ending in 6621 to conduct monetary transactions in excess of $10,000, in violation of Title 18 U.S.C. § 1957, on at least 11 separate occasions. Specifically, between December 2021 and May 2022, JOHN BROWN made the following financial transactions, each in excess of $10,000:

| Tompkins - TRICLOMES LLC Account Ending 6621 | | |
|---|---|---|
| DATE OF TRANSACTION | TRANSACTION DESCRIPTION | AMOUNT OF TRANSACTION |
| 12/29/2021 | O/W EUROLUX LLC | $ 15,000.00 |
| 1/20/2022 | ADP WAGE PAY | $ 11,224.15 |
| 2/3/2022 | ADP WAGE PAY | $ 11,468.24 |
| 2/17/2022 | ADP WAGE PAY | $ 13,068.93 |
| 3/4/2022 | ADP WAGE PAY | $ 13,742.58 |
| 3/8/2022 | O/W BUL AUTO SALES AND SERVIC | $ 16,219.00 |
| 3/18/2022 | ADP WAGE PAY | $ 13,394.04 |
| 3/31/2022 | ADP WAGE PAY | $ 16,386.88 |
| 4/14/2022 | ADP WAGE PAY | $ 15,310.13 |
| 4/28/2022 | ADP WAGE PAY | $ 14,879.93 |
| 5/12/2022 | ADP WAGE PAY | $ 21,291.19 |

### *JOHN BROWN's Tax Returns and Income*

51.     According to records obtained from JOHN BROWN's tax return preparer, the Internal Revenue Service assigned an Employer Identification Number ("EIN") via Form SS-4 to TRICLOMES and JOHN BROWN as member, on August 6, 2021. TRICLOMES's Operating Agreement indicated that JOHN BROWN owns 80% of the LLC, with two other individuals owning 10% each.

52.     Additional records from JOHN BROWN's tax return preparer indicated that a 2019 Form 1120-S U.S. Income Tax Return for an S Corporation was filed in the name of SNIPER for the tax year beginning October 1, 2019, and ending September 30, 2020. The 2019 1120-S reported on line 1a gross receipts or sales of $248,380.

53.     According to records obtained by JOHN BROWN's tax return preparer, a 2020 Form 1120-S U.S. Income Tax Return for an S Corporation was filed in the name of SNIPER for the tax year beginning October 1, 2020, and ending September 30, 2021. The 2020 1120-S reported on line 1a gross receipts or sales of $775,671. This significant increase in gross

receipts or sales between SNIPER's 2019 and 2020 tax returns coincides with JOHN BROWN's illegal sales of THC products and the formation of TRICLOMES on August 6, 2021.

54.     On both the 2019 and 2020 Forms 1120-S filed for SNIPER, the business activity is reported as "Personal Care Services" and the product or service is reported as "Tattoos & Piercing."

55.     According to JOHN BROWN's tax return preparer, no federal tax returns were prepared for SNIPER for 2021, 2022, 2023, or 2024.

56.     Based on historical New York State sales tax records obtained from JOHN BROWN's tax return preparer, between March 2018 and February 2022, SNIPER was averaging gross sales of approximately $305,000 to $421,000, annually.  According to records obtained by JOHN BROWN's tax return preparer, New York State and Local Sales and Use Tax Returns were filed for SNIPER.  Those filings reflect gross sales and approximate cash deposits as follows:

| Tax Year | Tax Period | Gross Sales (Per Tax Return) | Cash Deposits |
|---|---|---|---|
| 2019 | 03/01/2018 – 02/28/2019 | 305,887 | Not Analyzed |
| 2020 | 03/01/2019 – 02/29/2020 | 341,176 | 123,615 |
| 2021 | 03/01/2020 – 02/28/2021 | 307,614 | 166,708 |
| 2022 | 03/01/2021 – 02/28/2022 | 420,880 | 911,176 |

57.     Of note, the 2022 sales tax period reflects a significant increase in total cash deposits coinciding with the formation of TRICLOMES in 2021.

58.     According to records obtained by JOHN BROWN's tax return preparer, 2021 and 2022 Forms 1120-S were filed in the name of EXTREME GRAPHIX.  Both returns

reported $0.00 for gross receipts or sales, and an ordinary business loss of $25.00 related to taxes and licenses. According to JOHN BROWN's tax return preparer, the business activities of the tattoo business were reported on the SNIPER tax returns, and the EXTREME GRAPHIX tax returns were used to report the New York State annual franchise tax.

59.    JOHN BROWN reported that he had annual income of $1,200,000 on an "Application Information Form" obtained from American Express dated September 21, 2022.

60.    A typed document was seized in the search warrants conducted at 1631 and 1635 Dewey Ave., on July 1 and 2, 2024, which contained the heading "Personal Financial Statement" and listed JOHN BROWN's name and contact information below it. The document contained a section titled "Business Owned and Operated" with subsections for "Sniper Inc" and "Triclomes LLC." Images of the sections of this document are included herein for reference:

## Personal Financial Statement

John P Brown
1631 Dewey Ave
Rochester, New York 14615
585-██████████
██████████@yahoo.com

### Business Owned and Operated

- **Sniper Inc**
  - Parent company to Extreme Graphix, LLC
    - Been in business for over 30 years.
    - 12 employees
    - Annual sales $975.000.00
    - $500,000.00 in assets, inventory, and supplies
    - No business debt
    - All taxes and filings current
- **Triclomes LLC**
  - 2 years in business
  - 22 employees
  - Annual sales $2,500,000.00
  - $1,000,000.00 in assets and inventory
  - No business debt
  - Currently on extension for tax filing in leu of state and fed tax regulation passing.

61.    According to the "personal financial statement" of JOHN BROWN, TRICLOMES had annual sales of $2,500,000.

### *Wire Fraud Relating to COVID-19 Relief*

62.    The CARES Act was signed into law on March 27, 2020. The CARES Act provided temporary funding programs to address the COVID-19 outbreak. One of those programs which was already in existence, but expanded upon due to the COVID-19 Pandemic was the Economic Injury Disaster Loan ("EIDL") to assist business owners during the peak of the pandemic. This is a Small Business Administration ("SBA") loan program

designed to provide funding to existing companies that were experiencing a negative impact in revenue, or economic injury, due to the pandemic.

63.     Based on evidence gathered to date, JOHN BROWN perpetrated a scheme to fraudulently obtain EIDL loan proceeds by submitting loan applications containing false information to the SBA.  In total, JOHN BROWN was responsible for submitting three fraudulent EIDL applications in the names of businesses that he owns or controls.

64.     An EIDL loan, application number 3300075491, was submitted to the SBA on March 30, 2020.  The loan application is in the business name of SNIPER with EIN 20-3431150.  The address of the business is listed as 1631 Dewey Ave, Rochester, NY.

65.     The business phone number provided on this EIDL application, according to open-source information, is the phone number associated with EXTREME GRAPHIX. Additionally, JOHN BROWN provided this phone number to Advantage Federal Credit Union when he opened a personal bank account on or about May 18, 2022.  The phone number provided on this EIDL application for the primary contact is the same phone number that is associated with the owner of the device seized from JOHN BROWN's person the day of the search warrant at 1631 and 1635 Dewey Ave.

66.     The application lists the primary contact person as "John Brown" and lists his position as "CEO."  The email address provided on the application is the same redacted Yahoo email address that was listed on JOHN BROWN's "personal financial statement" referenced above.

67.     The application listed "Gross Revenues for the twelve (12) month prior to the date of the disaster (January 31, 2020)" in the amount of $1,200,000.  Cost of Goods Sold ("COGS") on the application is listed as $250,000.

68.     For the 12-month period prior to the date of the disaster, January 31, 2020, January 31, 2019, through January 31, 2020, JOHN BROWN had total cash deposits of approximately $136,810.

69.     According to a Profit and Loss statement for SNIPER provided by JOHN BROWN's tax return preparer, for the period October 2018 through September 2019, SNIPER had total income of approximately $336,470 and total cost of goods sold of approximately $9,734.  For the period October 2019 through September 2020, SNIPER had total income of approximately $248,380 and total cost of goods sold of approximately $4,322. Although the fiscal year for SNIPER does not align exactly with the 12 months prior to the date of the COVID-19 disaster, even if the two fiscal years were combined, the total income and total cost of goods sold for October 2018 through September 2020 would be approximately $584,850 and approximately $14,056, which is significantly lower than the gross revenue and cost of goods sold figures reported on the EIDL application totaling $1,200,000 and $250,000, respectively.

70.     Additionally, New York State Sales Tax filings in the name of SNIPER for the period March 1, 2018, to February 28, 2019, reported gross receipts of $305,887, and for the period March 1, 2019, to February 29, 2020, reported gross receipts of $341,176.

71.     The basic calculation used to determine how much money a business was eligible for through the EIDL program at the date of JOHN BROWN's application was (Gross Revenue less Cost of Goods Sold) divided by two; with a maximum amount available to any one company set at $150,000.[1]  In this case the formula was ($1,200,000 - $250,000) /

---

[1] Prior to April 6, 2021, the maximum loan limit for the COVID-19 EIDL program was 6-months of economic injury with a maximum loan amount of $150,000.

2 = $475,000, which is in excess of the maximum of $150,000, resulting in a loan amount of $150,000.

72.    The application requested that the funds from the EIDL loan be deposited into the SNIPER CNB account ending 7815. As noted above, JOHN BROWN and another employee are listed as signors on the account. The other employee was interviewed and said he/she stopped working for JOHN BROWN prior to the COVID-19 pandemic.

73.    The application was electronically submitted to the SBA via an interstate wire transmission from an IP address identified as 98.13.20.138, which according to open-source data, www.arin.net (American Registry for Internet Numbers), has been registered by Charter Communications since 2007. A representative from Charter also confirmed that Charter has owned the IP address since 2007. According to open-source data obtained from iplocation.net, this IP address is associated with and located within the Western District of New York. According to the SBA, application 3300075491 was received by a server located in the state of Washington.

74.    SBA EIDL application 3300075491 was approved and funded by SBA loan number 8213817807 in the amount of $150,000.

75.    On June 9, 2020, the amount of $149,900 ($150,000 less a $100 processing fee) was deposited into Canandaigua National Bank account ending 7815.

76.    The servers used by Canandaigua National Bank are maintained at a location within the Western District of New York. According to the SBA, EIDL proceeds were funded by the U.S. Treasury and disbursed funds originated from servers located in Sterling, Virginia.

77.    On June 11, 2020, which was two days after the EIDL funds were deposited, a check was written from the CNB account ending 7815 to an individual with the initials P.C.,

with "1631 Dewey" written on the memo line in the amount of $7,500. The check appears to be signed by JOHN BROWN. According to the Monroe County Real Property Records, P.C. is the former owner of 1631 and 1635 Dewey Ave, Rochester, NY.

78. On June 12, 2020, which was three days after the EIDL funds were deposited, $19,000 in cash was withdrawn from the CNB account ending 7815. The withdrawal slip appears to be signed by JOHN BROWN.

79. On June 17, 2020, which was eight days after the EIDL funds were deposited, two official checks were issued from the CNB account ending 7815 to Cycle Stop; one in the amount of $4,825.32 and one in the amount of $7,222.92, for a total of $12,048.24. The withdrawal slip for the official checks appears to have been signed by JOHN BROWN. According to open-source information, Cycle Stop is a Motorcycle dealer in Rochester, NY.

80. On June 26, 2020, which was 17 days after the EIDL funds were deposited, two checks were written from the CNB account ending 7815: one to Tompkins Trust, Escrow in the amount of $11,759.10 and one to an individual with the initials T.T., an Escrow Agent, in the amount of $1,709.85 for a total of $13,468.95. Both checks appear to have been signed by JOHN BROWN. According to open-source information, T.T. is a mortgage lender in Rochester, New York.

81. A copy of the U.S. Small Business Administration Loan Authorization and Agreement for funded EIDL loan #8213817807 signed by JOHN BROWN was found on the HP Desktop computer seized from the office located within EXTREME GRAPHIX.

82. In addition to the funded EIDL loan outlined above, there were two other EIDL applications that were submitted to the SBA in in the names of businesses owned or controlled by JOHN BROWN.

83.    EIDL loan, application number 3300088273, was submitted to the SBA on March 30, 2020, the same day that the funded EIDL loan application in the name of SNIPER was submitted, and from the same IP address, 98.13.20.138. According to the SBA, application 3300088273 was received by a server located in the state of Washington.

84.    Application 3300088273 listed the business legal name as JOHN P BROWN and the Trade Name/DBA as NAKED CLOTHING COMPANY. The application listed "Gross Revenues for the twelve (12) month prior to the date of the disaster (January 31, 2020)" in the amount of $560,000 and COGS as $32,000; thereby requesting a loan in the amount of $150,000.[2] The application also listed Rental Properties (Rental and Commercial) Only – Lost Rents Due to the Disaster as $20,000 and Cost of Social Services Operation of $65,000.

85.    EIDL loan, application number 3314309714, was submitted to the SBA on September 7, 2020 from IP address 2604:6000:6b86:6800:cd86:6e82:e851:2289. According to the SBA, application 3314309714 was received by a server located in the state of Iowa.

86.    Application 3314309714 listed the business legal name as NAKED CLOTHING COMPANY, LLC. The application listed "Gross Revenues for the twelve (12) month prior to the date of the disaster (January 31, 2020)" in the amount of $850,000 and COGS as $45,000; thereby requesting a loan in the amount of $150,000.[3]

---

[2] Maximum loan limit for the COVID-19 EIDL program was $150,000 at the time of application submission.
[3] Maximum loan limit for the COVID-19 EIDL program was $150,000 at the time of application submission.

87.     Both applications 3300088273 and 3314309714 list the owner as "John Brown" and list his title as "CEO." The email address provided on both applications is the same Yahoo email address listed on the SNIPER EIDL loan application discussed above.

88.     Both applications 3300088273 and 3314309714 requested that the funds from the EIDL loan be deposited into the SNIPER CNB bank account ending 7815.

89.     A copy of JOHN BROWN's 2019 Form 1040 U.S. Individual Income Tax Return was obtained from JOHN BROWN's tax return preparer. A 2019 Schedule C Profit or Loss From Business was included with the 2019 Form 1040 in the name of "NAKED CLOTHING COMPANY, LLC." The return reported $0 gross receipts, and total expenses of $750. Additionally, a 2018 Form 1040 was submitted with EIDL application 3300088273 and reported a loss from Schedule 1 Additional Income and Adjustments to Income of -$71,445. No 2018 Schedule C Profit or Loss From Business was included with the return submitted to the SBA.

90.     I am aware of no evidence indicating that JOHN BROWN had a bank account in the name of NAKED CLOTHING COMPANY. Additionally, as mentioned above, for the 12-month period prior to the date of the disaster, January 31, 2020, January 31, 2019, through January 31, 2020, JOHN BROWN had total cash deposits of approximately $136,810.

91.     According to another employee of JOHN BROWN's ("CW5"), NAKED CLOTHING COMPANY was a boutique store located inside of EXTREME GRAPHIX tattoo shop that sold denim, shirts, and jewelry. CW5 further stated that NAKED CLOTHING COMPANY was not a booming business, and it was very rare that they sold clothing.

92.    According to JOHN BROWN's tax return preparer, NAKED CLOTHING COMPANY had no sales in 2018, 2019, or 2020.

93.    Both EIDL applications 3300088273 and 3314309714 were flagged by the SBA as duplicates of the SNIPER EIDL application 3300075491 and accordingly were not funded.

### *JOHN BROWN'S Possession of Ammunition*

94.    As stated above, on or about July 1, 2024, into July 2, 2024, NYSP and HSI executed a New York State Court-issued search warrant at JOHN BROWN's residence and business located at 1635 Dewey Ave. in Rochester, New York.

95.    1635 Dewey Ave. is a 5-story building.  At the time the search warrant was executed, the first floor was an underground garage/shop containing various automobiles. The second floor was the EXTREME GRAPHIX tattoo shop, which had an attached personal office for JOHN BROWN ("BROWN'S OFFICE").  JOHN BROWN supervised the distribution of cannabis on this floor.  The third floor consisted of two sections.  The western side of the floor was a cannabis laboratory.  The eastern side of the floor was JOHN BROWN's apartment, which was segregated by a locked front door, accessed by key ("BROWN'S RESIDENCE").

96.    BROWN'S RESIDENCE included a kitchen, bathroom, and two separate bedrooms.  One bedroom contained the personal effects of JOHN BROWN's son.  The other bedroom contained JOHN BROWN's personal effects, and was segregated by a lockable door, and included an attached bathroom.  The fourth and fifth floors of 1635 Dewey Ave. were under construction.

97.    During the search, NYSP discovered mail addressed to JOHN BROWN in

BROWN'S OFFICE, along with 9mm ammunition depicted below:





98.     NYSP also found various ammunition types in JOHN BROWN's bedroom within BROWN'S RESIDENCE, along with personal effects such as credit cards in JOHN BROWN's name, depicted below:







99. NYSP also found various ammunition types in the EXTREME GRAPHIX tattoo shop area operated by JOHN BROWN, depicted below:







100.    In total, the ammunition seized weighed approximately 333 pounds and included numerous different manufacturers and calibers of ammunition. This evidence was seized by the NYSP and transferred to ATF where it is currently being held in custody.

101.    The ammunition types included:

   a.  Alexander Arms Beowulf .50 caliber;

   b.  Winchester 12-gauge shotgun, .22, and 9mm caliber;

   c.  Remington .40, .45, .38 and .22 caliber;

   d.  MaxxTech, Magtech, and Blazer .40 caliber;

   e.  Hornaday .357 and .380 caliber;

   f.  Federal 12-gauge, .22, .380, and .44 caliber;

   g.  Tula Ammo 12 gauge and .223 caliber;

   h.  American Eagle .44 caliber;

   i.  Fiocchi .380 caliber; and

   j.  Sellier & Bellot 45-70 caliber.

102.    A review of JOHN BROWN'S criminal history revealed that JOHN BROWN has four prior felony convictions.

103.    On or about November 7, 1991, JOHN BROWN pled guilty in County Court, Livingston County, New York, to the crime of Burglary 2nd Degree- Illegal Entry - Dwelling: a Class C Felony, and was sentenced to a term of 2 to 6 year imprisonment.

104.    On or about July 8, 1991, JOHN BROWN pled guilty in County Court, Wayne County, New York, to the crime of Burglary 2nd Degree- Illegal Entry - Dwelling: a Class C Felony, and was sentenced to a term of 2 to 6 years imprisonment.

105. On or about May 17, 1991, JOHN BROWN pled guilty in County Court, Onondaga County Court, New York, to the crime of Attempted Burglary – 2nd Degree, a Class D Felony, and was sentenced to a term of 1 to 3 years imprisonment.

106. On or about May 3, 1991, JOHN BROWN pled guilty in County Court, Erie County Supreme Court, New York, to the crime of Forgery – 2nd Degree, a Class D Felony, and was sentence to a term of 1 to 3 years imprisonment.

107. ATF agents have researched the aforementioned samples of ammunition to determine the place of manufacture. The various ammunition types were not manufactured in the State of New York, and consequently would have had to travel in and affected interstate or foreign commerce.

## CONCLUSION

108. Based on the above information, I submit there is probable cause to believe that between in or about March 2020 and in or about July 2024, in the Western District of New York, JOHN BROWN violated Title 18, United States Code, Sections 922(g)(1) (possession of a firearm and/or ammunition by a convicted felon); 1343 (wire fraud); 1956 (money laundering, promotion/concealment) and 1957 (money laundering, monetary transactions).

_____

VICTORIA J. SHARP
Special Agent
Internal Revenue Service-Criminal Investigation


Affidavit submitted electronically by email in .pdf format. Oath administered, and contents and signature attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 23rd day of October, 2025.

_____

HON. COLLEEN D. HOLLAND
United States Magistrate Judge